**SENIOR v. M R & R TRUCKING CO., et al.**
**No. 26086.**

Circuit Court, Duval County.

February 10, 1959.

Albert M. Crabtree, Jacksonville, for plaintiffs.

Francis P. Conroy and Lindner Smith, Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for defendants.

WILLIAM H. MANESS, Circuit Judge.

Motions for summary judgments in the above two cases, filed on behalf of defendants, M R & R Trucking Company, a Florida corporation, and James R. McGlanagham, were argued before this court on December 16, 1958, pursuant to which counsel for the respective parties were allowed time to file memorandums in support of their contentions.

The court has now considered the pleadings, affidavits and depositions on file in both cases and the authorities urged by counsel and is of the opinion that there is no genuine issue as to any material fact and that said defendants are entitled to a judgment in each case as a matter of law.

The plaintiff, J. L. Jackson, was the driver, and the plaintiff, Evelyn Senior, was a passenger, in the front seat of a 1949 Cadillac automobile which was traveling west on U. S. #90 from Madison, Florida towards Monticello, Florida at approximately 3:30 A. M. on Saturday morning, November 2, 1957. The driver had left Melbourne, Florida at approximately 2:20 P. M. the afternoon before and had driven to Jacksonville from which point both plaintiffs departed at approximately 11:30 P. M. on the trip to Madison.

The driver testified that the condition of U. S. #90 from the city limits of Madison west for approximately eight miles to the scene of the accident was in "bad" condition because it was under construction; that the weather condition at the time was "very foggy"; that from the time he hit the fog just west of Madison, where he could "see the road was under construction by driving on it," he drove at about 30 miles an hour continuously until the accident occurred; that he was within 15 or 20 feet from the rear of the defendant's truck "when I detected the truck"; that he swung over to his left to try to miss the rear of the truck but the right front of his car hit the left rear of the truck; that he could not see any lights on the truck nor any flambeaux, flares, flashlights or such in the area.

The passenger testified that it was very foggy after they got onto the highway that was under construction just west of Madison; that her brother, the driver, was driving around 30 miles per hour; that just prior to the time of the collision she remembers the last thing

was—"Me saying, asking him, 'What was that'?"; that she did not see any flares, flambeaux, signal lights or anything on this section of new construction and that when she saw the truck she did not pay any attention to the lights. Plaintiffs also filed the affidavit of a man who arrived at the scene after the accident, but was obviously not in a position to say what the conditions were at the time of the accident and immediately prior thereto.

Affidavits of defendant James R. McGlanagham, flagman J. C. Hutto, employed by the road contractor, and M. A. Scott, another motorist who was stopped at the time of and prior to the accident immediately in front of the truck of M R & R Trucking Company, operated by James R. McGlanagham, all show that the road from Madison to the point of the accident was under construction; that at a place approximately five miles west of Madison, due to the construction, only one line of traffic could proceed east or west at a time and at the time of the accident the flagman had stopped several cars at the east end of the one-way section to await the passage of traffic traveling east through the one-way section; that there were three or four flambeaux set out to warn motorists approaching the one-way section, and one such flambeaux was east of the rear end of defendant's truck prior to and at the time of the accident; that defendant's truck was parked at the rear and was the last of several motor vehicles awaiting clearance to travel west; that prior to and at the time of the accident the running lights of defendant's truck were on and the right turn directional signal was being operated. That these three affiants heard the approach of the 1949 Cadillac and that the flagman attempted to flag it but without reducing its speed it collided with the rear of defendant's truck when, at the last instant, it appeared to swing to the left.

It appears to the court from the foregoing undisputed material facts that the sole proximate cause of the accident was the negligence of the plaintiff J. L. Jackson who, when traveling at 30 miles per hour, was moving 44 feet per second through what he describes as "very foggy" conditions. The Supreme Court of Florida has held on occasions too numerous to cite that it is the duty of a motor vehicle driver, at all times, day or night, to operate such motor vehicle so that the driver can stop or control it within the range of his vision. Notwithstanding the fact that other witnesses testified that visibility was several hundred feet at the time of the accident, the plaintiff driver testified that he did not see the truck until it was 15 or 20 feet away. Simple arithmetic will demonstrate that the driver, Jackson, was traveling at a speed that placed objects 24 to 29 feet beyond the range

of his vision every second and it is common knowledge that even at 30 miles per hour a few seconds are required to stop an automobile.

Furthermore, taking the plaintiff passenger's testimony in the light most favorable to her, she was awake and aware for several miles that the car in which she was riding had traveled for several miles under very foggy conditions at 30 miles per hour at a speed at which the driver could not stop within the range of his vision, and over a road obviously under construction and on which special hazards might be encountered. Under such conditions it becomes the duty of a passenger to make a reasonable attempt, appropriate to the circumstances, to admonish the driver or protest. Failure to perform that duty when required by the circumstances constitutes negligence (see Walker, et al v. Loop Fish & Oyster Co., 211 Fed. 2d 777, and Florida cases therein cited).

But even if there was no duty on the part of the plaintiff passenger to protest under the conditions existing at the time, there is a total absence of any showing of negligence on the part of the defendants. The conditions existing at the time of this unfortunate accident are very common to motorists—so common, in fact, that when a motorist is made aware that the road over which he is traveling is under construction it should be anticipated that somewhere along the portion under construction he will encounter a one-way section and be required to stop, or encounter other stopped vehicles. It is not negligence for the operator of a motor vehicle to stop on the traveled portion of a highway, which is obviously under construction, pursuant to signals of a watchman or flagman on duty to direct the flow of traffic over a section of highway on which traffic can move only in one direction at the time.

The negative testimony of the plaintiffs "that they saw no lights, on the truck or in the vicinity where the truck was stopped", cannot outweigh the affirmative testimony of the flagman on duty and other persons at the scene who actually saw and testified to the existence of such lights.

Summary judgments will therefore be entered by separate order in favor of defendants upon the grounds — (1) that the sole proximate cause of the accident was the negligence of the plaintiff, J. L. Jackson; (2) that the evidence fails to show any negligence on the part of the defendants; and (3) that it affirmatively appears that the passenger, Evelyn Senior, was guilty of negligence proximately contributing to the accident.